IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

EMILY LEAK and DAVID LEAK,

    Plaintiffs,

  v.

BANK OF AMERICA
CORPORATION, *et al.*,

    Defendants.

CIVIL ACTION FILE NO.

3:14-cv-00164-TCB-RGV

## MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

Defendants Bank of America Corporation and Bank of America, N.A., for itself and as successor by merger to BAC Home Loans Servicing, L.P. ("BANA"),[1] collectively referred to as "defendants," have filed a motion to dismiss plaintiffs' first amended complaint, [Doc. 10], which plaintiffs oppose, [Doc. 12]. For the reasons that follow, it is **RECOMMENDED** that defendants' motion to dismiss the amended complaint, [Doc. 10], be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Although plaintiffs Emily Leak and David Leak ("plaintiffs") name both Bank of America, N.A., and BAC Home Loans Servicing, L.P., as defendants, <u>see</u> [Doc. 8], BAC Home Loans Servicing, L.P., merged with and into Bank of America, N.A., on July 1, 2011, <u>see</u> [Doc. 10 at 1 n.2]. The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 1997, plaintiffs purchased the real property located at 469 Little New York Trail, Whitesburg, Georgia (the "property"), with a loan obtained from Synovus/Branch Banking and Trust, which loan was later acquired by Countrywide Mortgage, and eventually defendants.  See [Doc. 8 at 3 ¶ 9].[2]  On July 24, 2003,

─────────────────────

[2] The facts are taken from plaintiffs' amended complaint as well as the parties' pleadings and do not constitute findings of fact by this Court.  In addition, defendants have attached certain exhibits to their motion to dismiss, see [Docs. 10-2 through 10-5], and while, generally, the Court "may not consider matters outside the pleadings without converting [a motion to dismiss] to a motion for summary judgment," Redding v. Tuggle, No. 1:05-cv-2899-WSD, 2006 WL 2166726, at *5 (N.D. Ga. July 31, 2006), adopted at *1; see also Omega Patents, LLC v. Lear Corp., No. 6:07-cv-1422-Orl-31DAB, 2008 WL 821886, at *1 (M.D. Fla. Mar. 20, 2008), the Court may consider the referenced exhibits without converting defendants' motion to dismiss into a motion for summary judgment since the documents are public records, and "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion," Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (per curiam) (unpublished) (citations omitted); see also Zivanic v. Wash. Mut. Bank, F.A., No. 10-737 SC, 2010 WL 2354199, at *2 n.2 (N.D. Cal. June 9, 2010).  The Court may also consider an exhibit without converting the motion into a motion for summary judgment if it is "central to the plaintiff[s'] claim[s] and the authenticity of the document is not challenged." Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (per curiam) (unpublished) (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam)); see also Atwater v. Nat'l Football League Players Ass'n, Civil Action No. 1:06-CV-1510-JEC, 2007 WL 1020848, at *3 (N.D. Ga. Mar. 29, 2007); Cobb v. Marshall, 481 F. Supp. 2d 1248, 1254 n.2 (M.D. Ala. 2007).  The documents at issue here are central to plaintiffs' claims and their authenticity has not been challenged.  Zinn v. GMAC Mortg., No. 1:05 CV 01747 MHS, 2006 WL 418437, at *3 (N.D. Ga. Feb. 21, 2006).

plaintiffs obtained a mortgage loan in the amount of $106,000 from Full Spectrum Lending, Inc., and in connection with this loan, plaintiffs executed a note and a security deed, which was recorded on September 12, 2003, at Deed Book 2425, Page 160, in the Superior Court of Carroll County, Georgia. See [Docs. 10-2 & 10-3].[3]

Sometime in 2008 or 2009, defendants commenced non-judicial foreclosure proceedings against the property, but plaintiffs allege they avoided foreclosure by paying $2,000 to reinstate the loan, which they assert was in default because defendants "failed to withdraw the monthly mortgage payments in question from [their] checking account after acquiring Countrywide, which had previously withdrawn such payments automatically."   [Doc. 8 at 3 ¶ 10].   Defendants subsequently commenced non-judicial foreclosure proceedings against the property again in either 2010 or 2011, but plaintiffs allege they paid $20,000 to avoid a second foreclosure.   [Id. at 3 ¶ 11].   Plaintiffs allege that they "paid despite the fact that [they] did not owe [defendants] any such past-due amount, and despite the fact that [defendants] either could not or would not explain how [they] could owe [defendants] such an alleged amount[.]"   [Id.].

---

[3] The note was sold to Countrywide, [Doc. 10-3 at 3], and the security deed conveyed the property to Mortgage Electronic Registration Systems, Inc., as grantee-nominee for Full Spectrum Lending, Inc., and its successors and assigns, and it also provided for a power of sale, see [Doc. 10-2].

Plaintiffs allege that sometime in 2012, defendants again "claimed that [they] were 'months behind' on their mortgage loan," [id. at 4 ¶ 14], and that as a result, they met with "a Bank of America representative [] to discuss and to try to address any problems with their mortgage loan," [id. at 4 ¶ 15]. Following this meeting, plaintiffs engaged in a "short sale" of the property, [id. at 5 ¶¶ 16-21 (internal marks omitted)], and they allege that during the "middle and latter parts of 2012," they had discussions with "other Bank of America agents and employees" regarding the "proposed 'short sale,' as well as the question of 'refinancing' or otherwise 'reinstating' [their] mortgage loan under Bank of America's 'loan modification' program," [id. at 5-6 ¶ 21].

During these discussions, plaintiffs allege that they were "repeatedly assured . . . that no foreclosure would take place," [id. at 6 ¶ 23], but that defendants "wrongfully, and with no notice received by [p]laintiffs, foreclosed on [their] home," [id. at 6 ¶ 24].[4] Plaintiffs allege that they were not aware that a foreclosure of the property had taken place "until some weeks thereafter," when "they were informed by a friend, in late September 2012, that several persons were at [their] home and were removing [their] personal property [] during an apparent eviction of [their]

---

[4] The property was sold at a non-judicial foreclosure sale on September 4, 2012. See [Doc. 10-4].

4

family." [Id. at 6 ¶¶ 24-25]. Plaintiffs further allege that upon their arrival to the property, they witnessed "several persons . . .wrongfully removing [their] personal property from the home and placing much of it in said persons' personal vehicles." [Id. at 6-7 ¶ 26].[5]

On September 5, 2014, plaintiffs filed their original complaint against defendants in the Superior Court of Carroll County, Georgia, see [Doc. 1-1], which defendants removed to this Court on October 24, 2014, see [Doc. 1]. Following a motion to dismiss filed by defendants, see [Doc. 3], plaintiffs amended their complaint on November 20, 2014, see [Doc. 8].[6] In the amended complaint, plaintiffs assert state law claims of wrongful foreclosure, breach of contract, breach of an agreement not to foreclose, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, promissory estoppel, conversion, and intentional and negligent infliction of emotional distress, and they seek punitive damages, reasonable attorney's fees and costs, and a declaratory judgment. See [id.].

_____

[5] On November 23, 2012, the property was transferred from BANA to Federal National Mortgage Association, see [Doc. 10-5], and the limited warranty deed evidencing the transfer was recorded with the Clerk of the Superior Court of Carroll County at Deed Book 5222, Page 100, see [id.].

[6] Because plaintiffs timely amended their complaint as a matter of course under Rule 15 of the Federal Rules of Civil Procedure, the Court denied defendants' motion to dismiss the original complaint as moot. See [Doc. 9].

On December 4, 2014, defendants filed a motion to dismiss plaintiffs' amended complaint, [Doc. 10], which plaintiffs oppose, [Doc. 12].

## II. STANDARD

Defendants move to dismiss plaintiffs' amended complaint for failing to meet the pleading requirements of Rule 8, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  [Doc. 10-1].  In considering a motion to dismiss, the Court must accept plaintiffs' allegations as true and construe the amended complaint in their favor.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).[7]  "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  The complaint need only provide enough information to give [defendants] fair notice of the

---

[7] "However, the court need not 'accept as true a legal conclusion couched as a factual allegation.'" Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Additionally, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.  If the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.'"  Id. (alteration in original) (footnote omitted) (quoting Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).  Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

plaintiff[s'] claim and the grounds the claim is based on." <u>Broner v. Wash. Mut. Bank, FA</u>, 258 F. App'x 254, 256 (11th Cir. 2007) (per curiam) (unpublished) (citation omitted) (<u>quoting</u> Fed. R. Civ. P. 8(a)(2)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [] plaintiff[s'] obligation to provide the grounds of [their] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (last alteration in original) (citations and internal marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," <u>id.</u> at 555, as the amended complaint must contain "enough facts to state a claim to relief that is plausible on its face," <u>id.</u> at 570. "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). The Supreme Court in <u>Iqbal</u> held:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed

> with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

556 U.S. 678-79 (last alteration in original) (citations and internal marks omitted).[8]

Thus, "[t]o state a plausible claim for relief, [] plaintiff[s] must go beyond merely pleading the 'sheer possibility' of unlawful activity by [] defendant[s] and so must offer 'factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged.'" Stabb v. GMAC Mortg., LLC, 579 F. App'x 706, 708 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted). "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law."  Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013), adopted at 1336 (citations and internal marks omitted).

---

[8] Moreover, "when a complaint is grounded in fraud, as it appears plaintiff[s'] [amended] complaint is, the [amended] complaint must comply with Fed.R.Civ.P. 9(b)'s heightened pleading requirement that [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Roundtree v. Countrywide Home Loans, Inc., No. 3:09-cv-189-J-32TEM, 2009 WL 5215334, at *4 (M.D. Fla. Dec. 29, 2009) (last alteration in original) (citation and internal marks omitted). "To satisfy Rule 9(b)'s 'particularity' standard, a complaint should 'identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff[s]; and (4) what the [d]efendants gain[ ] by the alleged fraud.'"  Id. (last alteration in original) (citation omitted) (quoting W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (per curiam) (unpublished)).

## III.  DISCUSSION

Defendants argue that plaintiffs' amended complaint should be dismissed pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.  [Doc. 10]. In particular, defendants contend that plaintiffs' wrongful foreclosure and intentional and negligent infliction of emotional distress claims are barred by the applicable statute of limitations, [Doc. 10-1 at 8-9], and that they also fail to state a claim that is plausible on its face, [id. at 10-11, 20-22].  Defendants also contend that plaintiffs' remaining claims should be dismissed for failure to state a claim, [id. at 12-16, 18-20, 22-25], and that their fraud and misrepresentation claims fail to meet the heightened pleading standard set forth in Rule 9, [id. at 16-18].  The Court will address each of plaintiffs' claims asserted against defendants in the amended complaint.

## A.   <ins>Wrongful Foreclosure and Intentional and Negligent Infliction of Emotional Distress Claims</ins>

Plaintiffs' amended complaint asserts claims of wrongful foreclosure and intentional and negligent infliction of emotional distress.  [Doc. 8 at 7-10 ¶¶ 29-41, 16-18 ¶¶ 69-74].[9]  In particular, Count One of the amended complaint asserts a

---

[9] Plaintiffs concede that they have failed to state a claim for negligent infliction of emotional distress and that this claim should be dismissed.  <ins>See</ins> [Doc. 12 at 18]. Accordingly, the Court will not further discuss this claim, and it is **RECOMMENDED** that plaintiffs' negligent infliction of emotional distress claim

wrongful foreclosure claim, and alleges that defendants wrongfully foreclosed on the property since plaintiffs never "received [] prior notice of the foreclosure sale, and had been repeatedly assured by Bank of America that no foreclosure was underway or would take place[.]"  [Id. at 7 ¶ 30]; see also [id. at 10 ¶ 38].  Plaintiffs also allege that the foreclosure was wrongful because they were not in default and that they "certainly received no notice thereof."  [Id. at 10 ¶ 39].  Defendants argue that these claims are barred by the applicable statute of limitations, and that they are due to be dismissed for failure to state a claim.  [Doc. 10-1 at 8-11, 20-22].

Defendants assert that a two-year statute of limitations applies to plaintiffs' wrongful foreclosure claim, and since they foreclosed on the property on September 4, 2012, the wrongful foreclosure claim is barred because it was not brought until September 5, 2014.  [Id. at 8-9 (citations omitted)].  In response, plaintiffs assert that they had no knowledge of the foreclosure sale date and that their claim did not accrue "until a time well after September 4, 2012, and hence well within two (2) years of their filing of this action."  [Doc. 12 at 20].[10]

_____

asserted in Count Nine of the amended complaint be **DISMISSED**.

[10] Plaintiffs also assert that even if the foreclosure sale occurred on September 4, 2012, the foreclosure "still did not divest the subject property from both Plaintiffs and Defendants, because Bank of America . . . merely conveyed the property to Bank of America on that day by the Deed Under Power, which was not recorded until January 16, 2013, and only conveyed the property away from Bank of America on

"Where a foreclosing creditor fails to comply with the statutory duty to provide notice of sale to the debtor . . ., the debtor may either seek to set aside the foreclosure or sue for damages for the tort of wrongful foreclosure." Puissant v. Bank of Am. Home Loan Servicing, LLP, Civil Action No. 5:12–CV–388(MTT), 2013 WL 6383102, at *4 (M.D. Ga. Dec. 5, 2013) (citations and internal marks omitted). "In a claim for wrongful foreclosure the applicable statute of limitations is dependent upon the nature of the damages sought by the plaintiff." In re McDaniel, 523 B.R. 895, 907 (Bankr. M.D. Ga. 2014). Pursuant to O.C.G.A. § 9-3-33, "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right of action accrues[.]" O.C.G.A. § 9-3-33. In Hauf v. HomeQ Servicing Corp., No. 4:05-CV-109 (CDL), 2007 WL 486699, at *5-6 (M.D. Ga. Feb. 9, 2007), the court ruled that the two-year statute of limitations in O.C.G.A. § 9-3-33 barred plaintiffs' claim for attempted wrongful foreclosure and any emotional distress claims related thereto. However, the court recognized that "there may be a set of circumstances where an attempted wrongful foreclosure causes a trespass or property damage,"

---

November 23, 2012 by a Limited Warranty Deed, which also was not recorded until January 16, 2013." [Doc. 12 at 20 (emphasis and citations omitted)]. Plaintiffs also assert that the eviction and loss of personal property as a result of the wrongful foreclosure occurred in "late" September, 2012. [Id. (internal marks omitted)].

11

id. at *6, for which a four year statute of limitations would apply, id.; In re McDaniel, 523 B.R. at 909 (holding that four year statute of limitations applies to property damage claim premised on wrongful foreclosure); see also Fortson v. Best Rate Funding Corp., Civil Action No. 1:13-cv-04102-CC, at [Doc. 13 at 7] (N.D. Ga. Sept. 2, 2014) (applying four year statute of limitations to wrongful foreclosure claim).

Here, viewing the allegations of the amended complaint in the light most favorable to plaintiffs, as required when ruling on a motion to dismiss, the Court finds that plaintiffs are seeking property damages premised on the alleged wrongful foreclosure, and the four year statute of limitations thus applies to this portion of their claim.  Specifically, plaintiffs allege that defendants' actions in wrongfully foreclosing on their property without notice caused plaintiffs to suffer the loss of their home and much of their personal property within the residence.  [Doc. 8 at 10 ¶ 41].  Thus, to the extent plaintiffs' claim is for property damages based on the alleged wrongful foreclosure, their complaint was timely filed within the applicable four year statute of limitations.  In re McDaniel, 523 B.R. at 909.

On the other hand, to the extent plaintiffs are seeking damages for personal injury from the wrongful foreclosure on September 4, 2012, the two-year statute of limitations applies, and "on a tort claim for personal injury[,] the statute of limitation generally begins to run at the time damage caused by a tortious act occurs, at which

12

time the tort is complete." Rivell v. Private Health Care Sys., Inc., 887 F. Supp. 2d 1277, 1284-85 (S.D. Ga. 2012) (citations and internal marks omitted). Although plaintiffs assert that they were unaware of the actual foreclosure date due to the lack of notice, "[m]ere ignorance of the existence of the facts constituting a cause of action does not prevent the running of the statute of limitations." Id. at 1285 (alteration in original) (citation and internal marks omitted). That is, the "true test to determine when the cause of action accrued is to ascertain the time when the plaintiff[s] could first have maintained [their] action to a successful result." Id. (citations and internal marks omitted). "In short, 'the statute of limitations begins to run when the plaintiff[s'] cause of action becomes legally cognizable." Id. (citation and internal marks omitted).

The foreclosure sale at issue occurred on September 4, 2012, see [Doc. 8 at 7 ¶ 30; Doc. 10-4], and therefore, plaintiffs' wrongful foreclosure claim began to accrue on that date, see BAC Home Loans Servicing, L.P. v. Wedereit, 759 S.E.2d 867, 872 (Ga. Ct. App. 2014); see also Learning Connections, Inc. v. Kaufman, Englett & Lynd, PLLC, No. 6:11–cv–368–Orl–19GJK, 2011 WL 2981726, at *5 (M.D. Fla. July 22, 2011) (citations omitted) (finding plaintiffs "suffered an actual injury when the [] Property was sold by foreclosure" since the "foreclosure sale of the [] Property extinguished Plaintiffs' legal interest in the [] Property"). Although plaintiffs maintain that they

13

were unaware of the "occurrence and of the timing" of the foreclosure sale until "they saw Exhibit B (Deed Under Power) attached to Defendants' Memorandum of Law in Support of Motion to Dismiss," [Doc. 8 at 8 ¶ 31 (emphasis, citations, and internal marks omitted)], "the law cannot protect plaintiffs from the expiration of claims the factual basis for which they could and should have discovered through the exercise of due diligence," Bryant v. Mortg. Capital Res. Corp., 197 F. Supp. 2d 1357, 1368 n.31 (N.D. Ga. 2002) (citation and internal marks omitted).  Indeed, in this case, the "gravamen of the underlying case is an allegedly wrong[ful] foreclosure," and plaintiffs "must show a separate independent act of actual fraud that deterred [them] from [timely] filing the suit, such as intentional concealment."   In re McDaniel, 523 B.R. at 908 (citations and internal marks omitted).  Plaintiffs have not alleged any facts that would warrant equitable tolling in this case as the alleged failure to provide notice and promises not to foreclose preceded the foreclosure, and any claim for personal injury premised on the alleged wrongful foreclosure on September 4, 2012, is therefore time-barred.[11]

---

[11] Moreover, even were plaintiffs' personal injury wrongful foreclosure claim not time-barred, to the extent their claim is premised on lack of statutory notice, this claim would still fail because, although plaintiffs allege that defendants did not comply with the statutory notice requirements because plaintiffs never received notice of the foreclosure, O.C.G.A. § 44-14-162.2 requires the secured creditor to send a debtor notice of the foreclosure sale no later than 30 days before the sale date by certified mail or commercial carrier, and it specifically states that "the notice

In Count Eight of the amended complaint, plaintiffs assert an intentional infliction of emotional distress claim against defendants based on the alleged wrongful foreclosure and subsequent eviction. [Doc. 8 at 16-17 ¶¶ 69-71]. Defendants likewise contend that this claim is barred by the two-year statute of limitations. [Doc. 10-1 at 9]. As previously discussed, "an action for injury to the person must be brought within two years after the right of action accrues," and the "two-year statute of limitations includes actions for intentional infliction of emotional distress." Smith v. Tandy Corp., 738 F. Supp. 521, 522 (S.D. Ga. 1990) (citation omitted) (citing O.C.G.A. § 9-3-33). "The date on which the cause of action accrues depends on whether the act causing the damage is in and of itself an invasion of some right of the plaintiff[s], and thus constitutes a legal injury, or if instead, recovery is sought only on account of damage subsequently accruing from and consequent upon the act." Fitzpatrick v. Harrison, 854 F. Supp. 2d 1334, 1338 (S.D. Ga. 2010) (citation and internal marks omitted). "If the act causing the damage itself constitutes a legal injury, the cause of action accrues and the statute begins to run from the time the act is committed." Id. (citation and internal marks omitted).

---

required . . . shall be deemed given on the official postmark day . . . ." O.C.G.A. § 44-14-162.2(a). Georgia law is clear that "the actual receipt (or want of receipt) by the grantor of the notice of sale under power is immaterial to the right of the grantee to sale under power." McCollum v. Pope, 411 S.E.2d 874, 874 (Ga. 1992).

"If, on the other hand, the act is of itself not unlawful in this sense . . . the cause of action accrues and the statute begins to run only when the damage is sustained." Id. (alteration in original) (citation and internal marks omitted).

Here, the alleged wrongful foreclosure occurred on September 4, 2012, and this act in and of itself would constitute an "invasion of some right of the plaintiff[s], and thus [] a legal injury," id. (citation and internal marks omitted), but plaintiffs also seek recovery "on account of damage subsequently accruing from and consequent upon the act," id. (citation and internal marks omitted).  As previously discussed, plaintiffs contend that as a consequence of the alleged wrongful foreclosure, they suffered the loss of much of their personal property within the residence subsequent to the foreclosure sale on September 4.  [Doc. 8 at 3 ¶ 10]. Since their intentional infliction of emotional distress is premised, at least in part, on damage that occurred subsequent to and as a consequence of the alleged wrongful foreclosure within two years prior to the filing of this action on September 5, 2014, their claim is not barred by the statute of limitations.[12]   Accordingly, it is **RECOMMENDED** that defendants' motion to dismiss plaintiffs' claims for

---

[12] However, any claim for damages based on intentional infliction of emotional distress that is premised on the foreclosure sale itself on September 4, 2012, is time barred.

wrongful foreclosure and intentional infliction of emotional distress as time-barred

be **GRANTED IN PART** and **DENIED IN PART**.

**B.    Breach of Contract and of the Implied Covenant of Good Faith and Fair Dealing Claims**

In their amended complaint, plaintiffs allege that defendants "breached the

express terms of the Security Deed and, on information and belief, the terms of the

Promissory Note . . . of which Plaintiffs have no copy[.]"  [Doc. 8 at 11 ¶ 43 (citation

omitted)].  Plaintiffs also allege that the "words and actions of Bank of America

created an enforceable agreement that it would not foreclose on [their] home while

the 'short sale' or 'loan modification' remedies to [their] alleged arrearage were

being pursued by the parties," and that they "believe that Bank of America should

have written evidence of that agreement[.]" [Id. at 11-12 ¶¶ 46-47].  Plaintiffs further

allege that defendants breached the implied covenant of good faith and fair dealing.

See [id. at 12 ¶¶ 49-52].  Defendants contend that these claims should be dismissed

for failure to state a claim.  See [Doc. 10-1 at 12-13].  In response, plaintiffs assert that

their amended complaint "now fully set[s] forth the factual allegations and the basic

elements necessary for [these claims]."  [Doc. 12 at 13-15].

"The elements for a breach of contract claim in Georgia are the (1) breach and

the (2) resultant damages (3) to the party who has the right to complain about the

contract being broken." Uhlig v. Darby Bank & Trust Co., 556 F. App'x 883, 887 (11th Cir. 2014) (per curiam) (unpublished) (citation and internal marks omitted). Although the factual allegations in the breach of contract count of the amended complaint are minimal, consisting of only three paragraphs, plaintiffs do incorporate the earlier allegations of the complaint that adequately specify the provisions of the Security Deed that they contend defendants breached.  [Doc. 8 at 11 ¶¶ 42-44]. Specifically, plaintiffs recite portions of the Security Deed that they contend were breached, [id. at 9-10 ¶¶ 36-37], and then allege that they "received no prior notice, written or otherwise, of the subject foreclosure sale; were not afforded any opportunity to have 'enforcement' of the Security Deed 'discontinued' at any time prior to the foreclosure; and were given no notice of an alleged breach of any covenant or agreement in the Security Deed 'prior to acceleration' or otherwise," [id. at 10 ¶ 38].  Plaintiffs go on to allege that they "have been damaged by said breach of contract through the loss of their home, the loss of their ability to obtain another mortgage loan, the loss of much of their personal property, and the emotional trauma of being mistreated in this manner by Bank of America."  [Id. at 11 ¶ 44]. These allegations are sufficient to state a plausible breach of contract claim.  See Phillips v. Ocwen Loan Servicing, LLC, No. 1:12-cv-3861-WSD, 2014 WL 4589818, at *5 (N.D. Ga. Sept. 12, 2014).

As for plaintiffs' claim of breach of the covenant of good faith and fair dealing, there is no independent cause of action in Georgia for such a claim apart from the breach of an express term of an underlying contract.  See Autry Petrol. Co. v. BP Prods. N. Am., Inc., 334 F. App'x 982, 984 (11th Cir. 2009) (per curiam) (unpublished) (citations omitted); Morrell v. Wellstar Health Sys., Inc., 633 S.E.2d 68, 72 (Ga. Ct. App. 2006) (citation omitted).  However, since plaintiffs have sufficiently alleged a claim for breach of contract, they have likewise stated a plausible claim for breach of the covenant of good faith and fair dealing.  See Wells Fargo Bank, N.A. v. Averett Family P'ship, LLLP, No. 4:12-CV-140 (CDL), 2012 WL 6728058, at *4 (M.D. Ga. Dec. 28, 2012); DeKalb Cnty. Sch. Dist. v. Gold, 734 S.E.2d 466, 476 (Ga. Ct. App. 2012) (footnote omitted) (finding that where plaintiff sufficiently alleged a breach of contract, "[i]t follows, then, that the trial court did not err in failing to dismiss [plaintiff]'s claims for breach of contract and for breach of the covenant of good faith and fair dealing implied therein"); TechBios, Inc. v. Champagne, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009) (footnote omitted) (concluding that plaintiff "has adequately set forth a claim of breach of contract of the . . . agreement, and duties imposed by the . . . agreement also serve as a sufficient basis for its claim that [defendants] breached the implied covenant of good faith and fair dealing").

19

With regard to plaintiffs' claim for a breach of an agreement not to foreclose, their allegations make clear that this is premised on the "words and actions" of defendants' agents or employees indicating that defendants would not foreclose. [Doc. 8 at 11 ¶ 46].  "Oral and unwritten agreements regarding interests in lands; to include reinstating a mortgage, refinancing a mortgage, or forbearing from foreclosure proceedings; are unenforceable under the Georgia Statute of Frauds." Kabir v. Statebridge Co., LLC, No. 1:11–cv–2747–WSD, 2011 WL 4500050, at *7 (N.D. Ga. Sept. 27, 2011) (citations omitted); see also Desouza v. Fed. Home Mortg. Corp., 572 F. App'x 719, 723 (11th Cir. 2014) (per curiam) (unpublished).  Although plaintiffs allege that they "believe" defendants have written evidence of the agreement not to foreclose, [Doc. 8 at 12 ¶ 47], "there is simply no factual support for [p]laintiff['s] conclusory novation allegation[,]" Kabir, 2011 WL 4500050, at *7 (footnote omitted).[13]

_____

[13] Furthermore, "[p]romises to forbear from collecting on a debt also require new consideration from the debtor," Kabir, 2011 WL 4500050, at *7 (citation omitted), and "[a]n agreement on the part of one to do what he is already legally bound to do is not sufficient consideration for the promise of another[,]" Iiles v. PNC Bank Nat'l Ass'n, No. 5:10–CV–180 (CAR), 2012 WL 3241927, at *2 (M.D. Ga. Aug. 7, 2012) (first alteration in original) (citation and internal marks omitted).  Plaintiffs have not alleged any new consideration on their part and this claim fails for this additional reason.

Accordingly, it is hereby **RECOMMENDED** that defendants' motion to dismiss plaintiffs' claim in Count Three for breach of an agreement not to foreclose be **GRANTED**, but that defendants' motion to dismiss the breach of contract claim asserted in Count Two and the breach of the implied covenant of good faith and fair dealing claim asserted in Count Four be **DENIED**.

## C.    Promissory Estoppel Claim

Plaintiffs also seek recovery under a theory of promissory estoppel, alleging that defendants represented that they would not foreclose on the property, and that they reasonably relied on those representations to their detriment.  [Doc. 8 at 14-15 ¶¶ 59-62].  "A promissory estoppel claim under Georgia law requires proof that (1) the defendant[s] made certain promises, (2) the defendant[s] should have expected that the plaintiff[s] would rely on such promises, and (3) the plaintiff[s] did in fact rely on such promises to [their] detriment."  Coffee v. Gen. Motors Acceptance Corp., 5 F. Supp. 2d 1365, 1383 (S.D. Ga. 1998) (internal marks omitted) (quoting Doll v. Grand Union Co., 925 F.2d 1363, 1371 (11th Cir. 1991)); see also O.C.G.A. § 13-3-44(a).  "Reliance is not reasonable if the 'clear and unambiguous provision[s]' of the written contract between the promisor and promisee 'served to place [the promisee] on due notice that he could not thereafter reasonably rely upon any words or other course of dealing to his inducement, other than a modification agreement actually

21

reduced to writing.'" <u>Sampson v. Wash. Mut. Bank</u>, 453 F. App'x 863, 867 (11th Cir. 2011) (per curiam) (unpublished) (alterations in original) (citations omitted). Moreover, promissory estoppel "does not apply to a promise that is vague, indefinite, or of uncertain duration." <u>Harris v. Chase Home Fin., LLC</u>, Civil Action File No. 4:11-cv-00116-HLM, at [Doc. 27 at 46 (internal marks omitted) (<u>quoting Mariner Healthcare, Inc. v. Foster</u>, 634 S.E.2d 162, 168 (Ga. Ct. App. 2006))] (N.D. Ga. Dec. 21, 2011).

Here, even if "words and actions" of "Bank of America's agent" could be construed as promises not to foreclose, plaintiffs have not "alleged sufficiently that [their] reliance on those statements was reasonable." <u>Abdullahi v. Bank of Am., NA</u>, 549 F. App'x 864, 868 (11th Cir. 2013) (per curiam) (unpublished).  Indeed, the express terms of the security deed, which makes clear that any extension of time for payment or modification of amortization of sums "shall not operate to release the liability of Borrower," that any "forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy," and that plaintiffs' failure to cure a default authorized an invocation of the power of sale, <u>see</u> [Doc. 10-2], renders any reliance by plaintiffs on the alleged representations by defendants unreasonable.  <u>Abdullahi</u>, 549 F. App'x at 868. Accordingly, plaintiffs have failed to state a plausible claim for promissory estoppel,

22

and it is **RECOMMENDED** that defendants' motion to dismiss this claim be **GRANTED**.

### D.   Fraud and Negligent Misrepresentation Claims

Plaintiffs' amended complaint is also premised on various allegations of fraud, including that "Bank of America repeatedly (a) falsely informed [them] that they were in default under their home loan, (b) falsely informed [them] that the only way to handle the alleged default was a 'short sale' or 'loan modification,' and (c) falsely assured [them] that their alleged default(s) in payment(s) were being 'handled' or 'taken care of' by a 'short sale' or by a 'loan modification' regarding their home, and thus that no foreclosure was underway or would take place." [Doc. 8 at 13 ¶ 54].  Plaintiffs also assert a negligent misrepresentation claim based on defendants' alleged promises not to foreclose.  [Id. at 14-15 ¶¶ 59-62].

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstance constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Brooks, 116 F.3d at 1371); see also WESI, LLC v. Compass Envtl., Inc., 509 F. Supp. 2d 1353, 1358 (N.D. Ga. 2007) (citation omitted) ("Essentially, Rule 9(b) requires plaintiffs in a fraud case to specify the who, what, where, when, why and how of the alleged fraud."). "[T]he same principles apply to both fraud and negligent misrepresentation cases and [] the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." Watts v. JPMorgan Chase Bank, Nat'l Ass'n, Civil Action No. 1:13–CV–00866–RWS, 2013 WL 3779152, at *3 (N.D. Ga. July 17, 2013) (alterations in original) (citation and internal marks omitted).

The amended complaint falls short of the Rule 9(b) pleading standard. Plaintiffs fail to describe precisely what statements were made, or provide the dates and details of any alleged misrepresentations. Indeed, plaintiffs "offer only vague generalizations about [defendants'] alleged misrepresentations and when they were made, and no information about who made them." Sheely v. Bank of Am., N.A., 36 F. Supp. 3d 1364, 1373 (N.D. Ga. 2014). Although plaintiffs contend that they have "fully set[] forth the factual allegations and the basic elements necessary for a Fraud [and Negligent Misrepresentation] claim under Georgia law," [Doc. 12 at 15-16 (emphasis omitted)], "whether their fraud [and negligent misrepresentation]

24

claim[s] [are] pleaded with the particularity required by Rule 9(b) is not a close question," and "by failing to include the specifics of any of their oral conversations [with defendants], [plaintiffs] have failed to satisfy Rule 9(b)," Sheely, 36 F. Supp. 3d at 1373-74.  Moreover, many of the alleged misrepresentations about which plaintiffs complain are not actionable as a matter of law.  See Koncul Enters., Inc. v. Fleet Fin., Inc., 630 S.E.2d 567, 570 (Ga. Ct. App. 2006) (citation and internal marks omitted) ("Fraud cannot consist of mere broken promises, expressions of opinion, unfulfilled predictions or erroneous conjecture as to future events."); Dollar v. NationsBank of Ga., N.A., 534 S.E.2d 851, 853 (Ga. Ct. App. 2000) (citations omitted) (in arm's-length mortgage transaction, it is borrower's "duty to exercise ordinary diligence to protect her own interest"); First Union Nat'l Bank of Ga. v. Gurley, 431 S.E.2d 379, 381 (Ga. Ct. App. 1993) ("the law is clear that a bank owes no legal duty to act as a customer's legal or financial advisor"); Pardue v. Bankers First Fed. Sav. & Loan Ass'n, 334 S.E.2d 926, 927 (Ga. Ct. App. 1985) (emphasis, citation, and internal marks omitted) ("There is, moreover, particularly no confidential relationship between lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests.  In these circumstances, . . . [borrowers] would not be entitled to rely on any such representations but would be under a duty to prosecute their own inquiries concerning their [liabilities].").  Thus,

it is  **RECOMMENDED** that defendants' motion to dismiss plaintiffs' fraud and

negligent misrepresentation claims be **GRANTED**.

### E.    Conversion Claim

Plaintiffs also allege that defendants' actions "constitute a wrongful and

illegal conversion of [their] personal property, carried out after September 4, 2012

and before November 23, 2012." [Doc. 8 at 15 ¶ 64]. Specifically, plaintiffs allege

that defendants "are liable for their agents' placement of [their] personal property

outside [their] home, where it was either taken by those agents or by others, or

ruined by the elements." [Id. at 16 ¶ 67].

"Under Georgia law, a prima facie claim for conversion requires a showing

of (1) title to the property in the plaintiff, (2) possession by the defendant, (3)

demand for possession, and (4) refusal to surrender the property, or an actual

conversion prior to the filing of the suit." Glades Pharm., LLC v. Murphy, No.

CIV.A. 1:04CV3817TWT, 2005 WL 3455857, at *8 (N.D. Ga. Dec. 16, 2005) (citing

Habel v. Tavormina, 597 S.E.2d 645, 648 (Ga. Ct. App. 2004)); see also Powell v. Bank

of Am., N.A., Civil Action No. 1:13–CV–03049–RWS, 2014 WL 2118821, at *3 (N.D.

Ga. May 21, 2014) . Defendants contend that plaintiffs' conversion claim fails as a

matter of law because plaintiffs have not alleged any facts to establish that

defendants are in possession of their personal property and they "never allege[] that

26

[they] demanded a return of [their personal property]" and that defendants refused to return the property.  [Doc. 10-1 at 19-20]; <u>Harris v. CitiMortgage, Inc.</u>, Civil Action File No. 1:14–CV–271–TWT, 2014 WL 1767717, at *4 (N.D. Ga. May 2, 2014). Plaintiffs have not responded to defendants' specific arguments regarding the shortcomings of their conversion claim and simply state that they have "fully set forth the factual allegations and the basic elements necessary for a [conversion] claim[.]" [Doc. 12 at 17 (citation omitted)].  However, plaintiffs' amended complaint does not allege facts to support the essential elements of a conversion claim against defendants, and since the plaintiffs have failed to contest defendants' arguments in their motion to dismiss the conversion claim, <u>see</u> <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir.1995) (citation omitted) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it[.]"); <u>Baker v. Dekalb Cnty., Ga.</u>, No. 1:12-cv-3247-WSD, 2014 WL 793527, at *6 n.13 (N.D. Ga. Feb. 27, 2014) (citations and internal marks omitted) ("Failure to respond to an opposing party's arguments regarding a claim constitutes abandonment of that claim, and warrants dismissal of the abandoned claim."); <u>see also</u> LR 7.1B, NDGa. ("Failure to file a response shall indicate that there is no opposition to the motion."), it is **RECOMMENDED** that plaintiffs' conversion claim be **DISMISSED**.

27

**F.**    <u>**Declaratory Judgment Claim**</u>

Defendants also move to dismiss plaintiffs' declaratory judgment claim because all the alleged conduct concerns past events and there are no allegations that plaintiffs are likely to suffer any concrete future injury.  [Doc. 10-1 at 24-25]. Plaintiffs respond that the declaratory judgment claim was asserted "in the event that discovery should indicate that Plaintiffs are representative of a class of persons either faced with or already the victims of such wrongful foreclosure and dispossessory activity by Bank of America and John Doe Company," and hence "if necessary to protect some future uncertainty."   [Doc. 12 at 19 (internal marks omitted) (citing <u>Henderson v. Alverson</u>, 123 S.E.2d 721 (Ga. 1962))].  However, plaintiffs acknowledge that a "potential class claim obviously is not a ripe or viable claim at this time," [<u>id.</u>], and effectively concede that their declaratory judgment claim is due to be dismissed, [<u>id.</u> at 23].  Since the very "purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law," <u>In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.</u>, 22 F. Supp. 3d 1322, 1332 (N.D. Ga. 2014) (emphasis added) (internal marks omitted) (<u>quoting</u> <u>Hardware Mut. Cas. Co. v. Schantz</u>, 178 F.2d 779, 780 (5th Cir. 1949)), and plaintiffs have conceded that no such actual controversy exists, it is **RECOMMENDED** that

defendants' motion to dismiss plaintiffs' declaratory judgment claim be **GRANTED**.[14]

### III. CONCLUSION

For the reasons stated herein, it is **RECOMMENDED** that defendants' motion to dismiss plaintiffs' amended complaint, [Doc. 10], be **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO RECOMMENDED** this 15th day of April, 2015.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[14] Plaintiffs' claims for attorney's fees, expenses, and punitive damages, [Doc. 8 at 18-19 ¶¶ 75-78], are "incidental to (and dependent upon) the successful prosecution of the main claim[s], and thus, need not be addressed on a motion to dismiss," Johnson v. Parker, No. 6:07-CV-926-ORL-19DAB, 2007 WL 4163639, at *4 (M.D. Fla. Nov. 16, 2007), adopted at *1.